IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TEXAS GAS TRANSMISSION, LLC, | : | Case No. 1:06-cv-440 |
| | : | |
| Plaintiff | : | District Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER DENYING |
| | : | DEFENDANTS' MOTION FOR |
| BUTLER COUNTY BOARD OF | : | SUMMARY JUDGMENT |
| COMMISSIONERS, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

This matter is before the Court on Defendants Butler County Board of Commissioners,

Butler County, Ohio, Gregory Jolivette, Charles Furmon, and Michael Fox's Motion for

Summary Judgment (doc. 44), Plaintiff's Memorandum in Opposition to Defendants' Motion

(doc. 52), and Defendants' Reply (doc. 59).  For the reasons that follow the Court **DENIES**

Defendants' motion for summary judgment.

**I.      BACKGROUND**

The instant case stems from a dispute related to the planned widening of Princeton Road

in Butler County, Ohio.  Plaintiff, Texas Gas Transmission LLC ("Texas Gas"), owns and

operates two natural gas transmission pipelines that traverse Butler County and run beneath

Princeton Road at certain points.  The pipelines are located on property for which Texas Gas

claims it holds a right of way and easement to "lay, construct, maintain, operate, alter, repair, or

remove" the pipelines.  (Doc. 1 at 7; doc. 49-2 ¶ 2.)  Butler County describes the easements as

running adjacent to Princeton Road, whereas Texas Gas maintains that the easements are both adjacent to and beneath Princeton Road.

Texas Gas' easements date back to several agreements executed in 1949 and 1959, whereby private landowners granted easements allowing Texas Gas to lay natural gas transmission pipelines on their property.  (See doc. 1 Exs. A, B, C.)  The relevant agreements are as follows:

(1) A Right of Way Agreement dated October 24, 1949, wherein private landowners William and Letitia Koch granted to Texas Gas a sixty-foot easement and right of way "to lay, construct, maintain, operate, alter, repair and remove a single pipe line . . . for the transportation of oil, gas, petroleum" over the lands described in the Right-of-way Agreement (doc. 1, Ex. A);

(2) A Right of Way Agreement dated February 28, 1959, whereby William and Letitia Koch granted to Texas Gas a fifty-foot easement, adjacent to and adjoining the previously granted sixty-foot easement, "to lay, construct, maintain, operate, alter, repair and remove a single pipeline . . . for the transportation of oil, gas, petroleum products or any other liquid gases or substances which can be transported through a pipeline over" the lands described in the Agreement (doc. 1, Ex. B); and

(3) A Right of Way Agreement dated October 4, 1949, whereby private landowners Josie and William Brophy granted to Texas Gas "the right to lay, construct, maintain, operate, alter, repair, remove, change the size of . . . one line of pipe" over their land as described in the Right of Way Agreement (doc. 1, Ex. C).

The easements ensure that Texas Gas has access to the pipelines in order to perform necessary maintenance, such as improvements and modifications required under federal law.[1]  Of particular importance to this case is Texas Gas' continuing ability to meet safety requirements imposed by federal laws such as the Natural Gas Pipeline Safety Act, 49 U.S.C. §§ 60101, *et seq.* As a result of previous attempts to bring its pipelines into compliance with federal law, those portions of Texas Gas' pipelines that currently run beneath Princeton Road have been encased with protective coverings designed to insure the integrity of the pipelines.

In 2003, Texas Gas learned that Butler County planned to make certain improvements to Princeton Road at an entrance to a subdivision that Defendant HUT-1-LLC was developing.  The proposed improvements, which include plans to widen the road, would result in the road being extended beyond the current pipeline encasements.  According to Texas Gas, subjecting unencased pipes to construction and highway traffic loads would not be safe.  Texas Gas proposed two alternative plans to accommodate the project, depending on whether both or only one side of the road would be impacted. One plan was projected to cost $868,134 and the other to cost $348,067.

The parties reached an impasse over who should absorb the cost of encasing the pipelines and on July 7, 2006, Texas Gas filed suit against Butler County, the Butler County Board of Commissioners, three named Butler County Commissioners, and HUT-1-LLC, asserting claims for declaratory and injunctive relief, a state law trespass claim, and takings claims under both the United States and Ohio Constitutions.  (Doc. 1.)  The Butler County Defendants (collectively,

---

[1] As a pipeline company engaged in the transportation of natural gas in interstate commerce, Texas Gas is subject to regulation by the United States Department of Transportation under the Natural Gas Pipeline Safety Act, 49 U.S.C. §§ 60101, *et seq.*, and the National Gas Act, 15 U.S.C. §§ 717, *et seq.*  (Doc. 1.)

Butler County, the Butler County Board of Commissioners, and the three named Commissioners)

moved to dismiss the complaint.  In an order docketed on March 5, 2007, the Court granted in

part Defendants' motion and dismissed all of Plaintiff's claims except those for declaratory and

injunctive relief.  Thus, the only issue remaining before the Court is the determination of the

parties' rights to the property in question.  More specifically, the Court must determine who

bears responsibility for the costs of encasing the additional portions of the pipeline that may be

covered by the proposed expansion.

## II.      SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  On a motion for

summary judgment, the movant has the burden of showing that no genuine issues of material fact

are in dispute, and the evidence, together with all inferences that can permissibly be drawn

therefrom, must be read in the light most favorable to the party opposing the motion.  Matsushita

Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986).  The moving party

may support the motion for summary judgment with affidavits or other proof or by exposing the

lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

In responding to a summary judgment motion, the nonmoving party may not rest upon

the pleadings but must go beyond the pleadings and "present affirmative evidence in order to

defeat a properly supported motion for summary judgment."  Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 257 (1986).  The nonmoving party "must set forth specific facts showing there is a

genuine issue for trial."  Fed. R. Civ. P. 56(e).  The task of the Court is not "to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial." Liberty Lobby, 477 U.S. at 249.  A genuine issue for trial exists when the evidence is

not "so one-sided that one party must prevail as a matter of law." Id. at 252.

## III.    ANALYSIS

The Butler County Defendants move for summary judgment, arguing that as a matter of

law, Texas Gas is responsible for any changes to its pipeline necessitated by the Princeton Road

improvements.  Butler County contends that Princeton Road is a "3%" road, with a right of way

sixty-six feet in width that preexists and predominates the easements obtained by Texas Gas for

the pipeline.  Texas Gas, on the other hand, denies that Princeton Road is a 3% road and claims

that Butler County's right of way is only fifty feet in width meaning that the planned expansion

will necessarily encroach upon Texas Gas' easement.  Texas Gas further claims that to the extent

that the improvements will encroach upon its subsurface rights, Butler County must compensate

Texas Gas for the encroachment.

### A.    The Nature of the Princeton Road Right of Way

At present, the precise width of the Princeton Road right of way remains disputed.  In

addressing this question, the parties focus entirely on whether or not Princeton Road qualifies as

a 3% road.  That the parties chose to focus a great deal of attention on this matter does not mean

that it is necessarily dispositive of either the Court's determination of the width of the Princeton

Road right of way[2] or of the ultimate question of who must bear responsibility for the costs of

encasing Texas Gas' pipelines.  Nonetheless, because Defendants devote the majority of their

briefing to this matter, the Court addresses it in detail herein.

_____

[2] For example, it appears from the opinion of Butler County's expert that the road may be
a 3% road and yet have a right of way greater than the sixty-six feet originally designated for 3%
roads.   (See Wilkens Dep. Ex. 6; doc. 30-2 at 3-4.)

In 1803, the United States Congress enacted a law providing that three percent of the funds realized from the sale of public lands in Ohio would be returned to Ohio for the purpose of laying out, opening, and making roads.  See An Act: In addition to, and in modification of, the propositions contained in the act entitled "An act to enable the people of the eastern division of the territory northwest of the river Ohio, to form a constitution and state government, and for the admission of such state into the Union, on an equal footing with the original states, and for other purposes," ch. 21, 2 Stat. 226 (1803).

Pursuant to that act, Ohio enacted legislation on February 18, 1804 appropriating money for the development of new roads and creating a pattern for laying out those roads.  An Act, for Opening and Regulating Roads and Highways, 2 Ohio Laws 207, 210.  All roads created pursuant to that act were to be sixty-six feet in width:

> [t]hat it shall be the duty of each road commissioner, to cause the road for which he is appointed to be carefully surveyed and plainly marked, on or as near a direct line as the nature of the ground and situation of the country over which the same is to pass, will admit; and all roads laid out under this act, shall be sixty-six feet in width and shall be and remain public highways.

2 Ohio Laws 136, 141-42 (1804).  As a corollary to this act, Ohio also passed in 1804 An Act, for Opening and Regulating Roads and Highways, 2 Ohio Laws 207, providing for the appointment of viewers and surveyors who:

> . . . shall protract a survey of said road; which, together with the proceedings of the said viewers, shall be certified respectively and returned to said commissioners at their next session, to be held for said county, and the commissioners, on receiving such return, shall cause the same to be publically read in open meeting, on two different days of the same meeting, and if no objections are made to such proposed road, on the second reading, it shall be the duty of said commissioners, to order the said road to be opened a necessary width, not exceeding sixty-six feet, and made in other respects convenient for the passage of travelers, and cause a record thereof to be made, which thenceforth shall be deemed a public road.

6

2 Ohio Laws 207, 210 (1804).

Over a century later, the Supreme Court of Ohio held that the act of February 18, 1804 "operated to create in the state a 66-foot right of way for each '3% road' laid out and opened in accordance therewith, and such 66-foot right of way cannot be said to have later been lessened by the mere peaceful encroachment thereon for a number of years by a private individual." Hernik v. Director of Highways, 169 Ohio St. 403, 160 N.E.2d 249 (Ohio 1959) (syllabus ¶ 1). Therefore, one of the primary questions in this case is whether Princeton Road may be fairly characterized as a 3% road.

In addressing this question, Defendants rely almost entirely on the report of their expert witness, Gregory Wilkens, Butler County Engineer.  Wilkens tracks modern day Princeton Road back to 1806 when Ohio again enacted legislation pertaining to the creation of 3% roads.  The 1806 act, An Act, Making Further Appropriations of the Three Percent, Granted for Laying Out, Opening and Making Roads in this State (hereinafter the "1806 Act"), 4 Ohio Laws 28 (1806), appointed certain road commissioners to lay out roads, including a road "from Lebanon by Hamilton to the west line of the state" (hereinafter "the Lebanon road").  Id. at 30.  By resolution, the Ohio General Assembly appointed James Heaton to oversee the creation of the Lebanon road.  (See Wilkens Dep. Ex. 6-3, Resolution Appointing Certain Road Commissioners; doc. 30-2 at 15.)  After reviewing the following historical documents, Wilkens deduced that modern day Princeton Road is the same Lebanon road described in the 1806 Act:

(1) A Record of Roads dated December 5, 1808 documenting James Heaton's survey of the Lebanon Road: According to Wilkens, this document "depicts the exact location of the road in degrees, links, and chains," and establishes the road as the third 3% road to be constructed through Butler County.  (Wilkens Dep. Ex. 6; doc. 30-2 at 2.)

(2) A plat received and recorded October 11, 1812: Wilkens alleges that the plat depicts Prince Town in Liberty Township along the Lebanon road and claims that it corresponds with the  "location of what is now known as Princeton on what is now called Princeton on what is now called Princeton Road, formerly referred to as the road from Hamilton to Lebanon." (Id.)

(3) A map of Liberty Township taken from an 1836 James McBride Atlas, showing the east-west road through Prince Town as the "Road to Lebanon," and corresponding with modern-day Princeton Road.  (Id.)

(4) Butler County Commissioners Records dated 1860 and allegedly referencing that "Hamilton and Princeton Turnpike Company have the exclusive right-of-way of the Old Lebanon Road, from the east line of the corporation of the city of Hamilton to the point where said road crosses the Princeton and Port Union Turnpike . . .."  (Wilkens Dep. Ex. 6; doc. 30-2 at 3.)

(5) A map of  Liberty Township from a 1930 Butler County Atlas, allegedly identifying the east-west road through Princeton is called Hamilton & Lebanon Pike. (Id.)

(6) A 1936 map and road index of Liberty Township that allegedly indicates that road 64, called Hamilton & Lebanon Pike, has a width of 60 feet.  (Id.)

(7) An April 29, 1938 Butler County Commissioners resolution stating: "Be it resolved . . . that said Board agrees to furnish to the said furnishing to the Director of Highways, without cost to the State of Ohio exclusive of cuts or fills, a *minimum* of 50 feet of right-of-way on the Princeton Road . . .."  (Id.; doc. 30-3 at 3.)

(8) Maps and plats from a 1958 Butler County atlas indicating that the east-west road through Liberty Township previously called Hamilton & Lebanon Pike had been renamed

8

Hamilton Princeton Road and showing the width of that road as being 60 feet.  (Wilkens Dep. Ex. 6; doc. 30-2 at 3.)

All of these documents appear as attachments to Wilkens' expert report, which Butler County both filed separately (doc. 30) and submitted as an exhibit to Wilkens' deposition (Wilkens Dep. Ex. 6).  The quality of the documents, most if not all of which are photocopied, is poor, rendering it difficult for the Court to examine Wilkens' assessment of Princeton Road as a 3% road.  Wilkens ultimately concludes based on more recent documents[3] that additional dedications of land have been made at various points of Princeton Road and that at the location of Texas Gas' pipeline easements the Princeton Road right of way currently spans 100 feet. (Wilkens Dep. Ex. 6; doc. 30-2 at 3-4.)

Texas Gas responds with the testimony of its own expert witness, G. Robert Hines, who determined from his review of various public records that Princeton Road is not a 3% road, but rather a public roadway with a fifty-foot easement.  Hines testified that he understood the pertinent 1804 legislation to show that only two 3% roads were established in Butler County, neither of which corresponded with the location of Princeton Road.  (See Hines Dep. 31-34.) Further examination of historic records revealed that Princeton Road was originally established as a private turnpike that later evolved into a public road.  (Hines Dep. Ex. 1.)  According to Hines, there would have been no need to operate Princeton Road as a private turnpike if it had originally been established as a 3% public highway. As to the portion of Princeton Road that overlapped Texas Gas's easement, Hines found as follows:

_____

[3] Butler County either has not supplied the Court with these documents or has failed to properly identify them.

> The only evidence found of record in Butler County, Ohio related to the exact
> established width of Princeton Road, at the point where the gas transmission
> pipeline easements granted by William F. Koch, Sr. and Letitia Koch . . . cross the
> entire width of Princeton Road in a northeastwardly direction, is the Dedication
> Plat of Princeton Road adopted by the Board of County Commissioners of Butler
> County, Ohio on April 29, 1938 establishing Princeton Road, Nos. 18B and 18C,
> as a fifty (50) foot wide county road, along the northerly line of the 149.07 acre
> Koch tract, preliminary to its submission to the state highway system.

(Id. at 3.)   Accordingly, Hines concluded that he had seen no evidence that Princeton Road was

a 3% road and that the legal width of Princeton Road stands at fifty feet.

Butler County urges the Court to disregard Hines' conclusions, arguing that Hines'

testimony and opinion are insufficient to create a question of fact because Hines failed to

consider specific necessary documents.  In particular, Hines testified that he did not review and

was not aware of the 1806 Act when formulating his opinion. As Butler County points out, Hines

conceded that the 1806 Act had a "substantial impact" on his opinion.  (Hines Dep. 62.)  Hines

additionally testified that he could not exclude the possibility that Princeton Road was in fact a

3% road (id. at 47-48) and that, in his opinion, the evidence he had before him was too vague as

to provide a means to trace the metes and bounds description of the road that Heaton had been

appointed to lay out as described in the 1806 Act (id. at 41, 49).  Despite these concessions,

Hines did not withdraw his opinion that Princeton Road originated as a turnpike and that the

evidence does not show that it is a 3% road:

> . . . The historical genesis of Princeton Road that I came to know through my
> examination was a small country road that had its genesis from two turnpikes.
>       Turnpikes, as you would know just from the common usage of the term,
> you don't take a three-percent road that would be, as we know, State Route 73,
> which is a major east/west corridor, Cincinnati-Dayton Road, which is a major
> north/south corridor, and have them more bound from a three-percent major
> artery that your suggestion would have been built out in 1806 or built out under
> the auspices of 1806 money that was sent to the State, and then somehow,
> between 1806, or that date when they finally built the road out, and somehow gets
> transferred from a state-owned highway to a privately-run turnpike by two

> separate private turnpike companies.  That's what I can't get my head around,
> how that could happen.  So I've excluded, if you will, that Princeton Road is a
> three-percent road because the genesis of records does not confirm that.

(Id. at 48.)

Contrary to Defendants' assertion, Hines' testimony does not signal the absence of any

questions of fact.  To the contrary, without more evidence to support either parties' position, the

conflicting opinions of the experts indicates that questions of fact remain.  Defendants'

arguments merely serve to challenge the strength of Hines' opinion, a challenge that is reserved

for consideration by the fact finder at trial.  See Murphy v. Hicks, No. 1:04-CV-00488, 2005 WL

1421960, at *4-5 (S.D. Ohio June 16,  2005); Phillips v. Cohen, 400 F.3d 388, 399 (6th Cir.

2005) ("Indeed, competing expert opinions present the 'classic battle of the experts and it [is] up

to a jury to evaluate what weight and credibility each expert opinion deserves.'" (citing Cadmus

v. Aetna Casualty and Surety Co., No. 95-5721, 1996 WL 652769 (6th Cir. Nov.7, 1996))

(internal quotations omitted)); Edwards Systems Technology, Inc. v. Digital Control Systems,

Inc., 99 F. App'x 911, 921, 2004 WL 1153662, at *10 (Fed. Cir. May 18, 2004) (finding "a

classic 'battle of the experts' which renders summary judgment improper").  Thus, continuing

fact disputes preclude a finding that Princeton Road is a 3% road that, consequently, carries with

it a right of way sixty-six feet in width as Defendants suggest.

**B.      Superiority of Rights**

The parties next dispute the superiority of each other's easements.[4]  Texas Gas claims

that its subsurface rights are superior to Butler County's rights in the Princeton Road right of

---

[4] Presumably, the parties dispute this issue because they believe the party with the superior easement will not carry financial responsibility for reinforcing the gas lines.  Again the Court notes that the issue of superiority may not prove dispositive of the larger issue of liability for the reinforcement costs.

11

way. Disputing this, Butler County argues that its right of way is superior because it existed

prior to Texas Gas' easement and because, through a 1959 agreement, Texas Gas subordinated

its easement rights to Butler County's rights of way.

To show the superiority of its right of way, Butler County points to an agreement

between Texas Gas and Butler County, executed in 1959, that provides as follows:

> That Texas Gas Transmission Corporation, in consideration of the granting to it
> by the Board of the County Commissioners of Butler County, Ohio, the right to
> construct, maintain, operate, replace and remove a pipeline underneath and across
> certain roads and streets in Butler County, Ohio, hereby promises and agrees that
> if any lands over which it has obtained easements for pipeline purposes are later
> subdivided and roads or streets are dedicated for public use over said lands in
> Butler County, Ohio subject to said easements to Texas Gas Transmission
> Corporation, the rights of the public to use such dedicated streets shall be
> paramount to the right of Texas Gas Transmission Corporation, its successors and
> assigns, lessees or agents; and any construction, maintenance, operation,
> replacement or removal of pipelines across or underneath said dedicated streets or
> roads shall be so constructed, maintained and operated as not to unduly
> incommode the public in the use of said roads or streets.

(Doc. 17, Ex. A.) Butler County interprets this language broadly to mean that Butler County's

rights are superior to any competing rights held by Texas Gas. Texas Gas, on the other hand,

interprets the agreement narrowly, pointing out that it subordinated its rights only to the "public

use" of the streets and promised not to "unduly incommode" the public when exercising its own

easement rights. According to Texas Gas, the passage cited above describes only the

relationship of the gas company's rights *vis-à-vis* the rights of the public to the continued use of

the roadways, and does not touch upon the relative rights of Butler County to expand or improve

those roadways.

Without evidence to the contrary, the Court finds Texas Gas' reading of the 1959

agreement to be more closely in line with the plain language of the contract. Butler County

presents no evidence that Texas Gas has in any way incommoded the public's use of Princeton

12

Road.  Butler County claims that the planned expansion is necessary to alleviate traffic and

facilitate safe public use, but cites absolutely no evidence or authority for this proposition.

Moreover, Texas Gas points out that it does not actually seek to halt the planned expansion.

Instead, the company merely disputes who bears financial responsibility reinforcing its pipelines,

where such reinforcement is necessitated solely by Butler County's exercise of its alleged right

of way.  Recognizing this, Butler County, again providing no factual support, claims that

because the cost of the pipeline reinforcements will far exceed the total cost of the road

improvements, the resultant burden would render the entire project impractical and therefore

interfere with the public use of the roads.  At the summary judgment stage, Butler County's

unsupported assertions are insufficient to demonstrate that, as a matter of law, its rights are

superior to those of Texas Gas.  Even if the Court were to hold, at this stage, that a planned road

expansion constitutes a "right of the public to use" the road, as contemplated in the agreement,

questions remain as to whether the planned expansion actually falls within Butler County's as of

yet undefined right of way.

Butler County next argues that because Butler County's right of way was supposedly

created prior to Texas Gas' easement, Texas Gas cannot as a matter of law take any action that

would interfere with its right.  In support of its position, Butler County relies primarily upon The

Cincinnati Gas & Electric Co. v. Board of Commissioners, Butler County, Ohio, Case No.

CA2004-09- 220 (Judgment Entry)[5], in which the Court of Appeals for the Twelfth District of

Ohio affirmed the dismissal of a complaint brought by Cincinnati Gas & Electric Co.

---

[5] The Cincinnati Gas & Electric Co, Case No. CA2004-09-220, has little if any
precedential value.  The Ohio Appellate Court explicitly states in its judgment entry that "this
entry shall not be relied upon as authority and will not be published in any form."  Id. ¶ 7.

("Cincinnati Gas") seeking compensation after Butler County commenced road improvement

projects that forced Cincinnati Gas to relocate its electric facilities.  In that case, Butler County

had rights of way in the subject roads and Cincinnati Gas has easements on the same property to

install electric facilities.  In affirming the dismissal of Cincinnati Gas' complaint, the appellate

court relied on prior cases in which courts have held that where the public's right of way

predates a utility's easement, the public's rights are superior and the utility must absorb the cost

of relocating its lines or facilities.  Id. ¶5 (citing Sussex Rural Electric Cooperative v. Wantage

Township, 217 N.J. Super. 481, 526 A.2d 259, 262 (N.J. Super. Ct. 1987) and State ex rel.

Herman v. Electric Dist. No. 2, 106 Ariz. 242, 474 P.2d 833, 835 (Ariz. 1970)).

Texas Gas, to the contrary, claims that its pipelines are not interfering with Butler

County's right of way and that because that right of way only encompasses surface rights, Butler

County must compensate Texas Gas to the extent that the Princeton Road improvements

encroach upon its subsurface rights.  Texas Gas relies on St. Albans Township Board of Trustees

v. Columbia Gas Transmission Co., 116 Ohio App. 3d 349, 688 N.E.2d 48 (Ohio App. 1997). In

St. Albans, the plaintiff county planned to lower the grade of a public road and filed suit seeking

to require the defendant utility company to move or relocate, at the utility company's expense, a

natural gas pipeline crossing beneath the road.  The right of way for the road predated the utility

company's easement.  However, the court found that because the county's right of way did not

give it subsurface rights as did the utility's easement, the county would have to provide

compensation for encroachment on the utility's subsurface rights.  Id. at 51.

Butler County is correct that as a general matter, when parties hold separate servitudes to

the same property, "[i]n the event of irreconcilable conflicts in use, priority of use rights is

14

determined by priority in time."  Restatement (Third) of Property (Servitudes) § 4.12 (2000).

However, the Court cannot determine the priority of the parties rights without first determining

the nature of these rights.[6]  As set forth above, genuine issues of material fact remain as to

whether Princeton Road is a 3% road as well as to the actual width of the Princeton Road right of

way.  Moreover, as Texas Gas points out, similar questions of fact exist as to the nature of the

parties' subsurface rights.  Accordingly, the Court need not and indeed cannot at this time

resolve the proper application of the precedent relied upon by the parties.  Instead, the Court

finds that summary judgment is not appropriate as Butler County failed to meet its burden of

showing that no genuine issues of material fact are in dispute.

## IV.    CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' Motion for Summary

Judgment.

IT IS SO ORDERED.


___s/Susan J. Dlott_____
Susan J. Dlott
United States District Judge

---

[6] Butler County attempts to make this leap, citing the deposition testimony of William Long, Texas Gas' Senior Engineer.  Based on Long's testimony, Butler County claims that "Texas Gas concedes that if the right of way for Princeton Road is 66-feet, then the planned improvements to Princeton Road do not encroach upon Texas Gas's easements."  (Doc. 44 at 9.) The testimony Butler County cites consists mainly of answers to questions seeking to elicit a legal conclusion from Long, and counsel for Texas Gas objected to Butler County's line of questioning on that basis.  (See Long Dep. at 48-50.)  Indeed, the question of whether the Princeton Road improvements encroach upon Texas Gas' easement is the precise legal question this Court must answer.  Accordingly, the Court sustains Texas Gas's objection and thus does not consider Long's testimony on this matter.