IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TEXAS GAS TRANSMISSION, LLC, | : | Case No. 1:06-cv-440 |
| | : | |
| Plaintiff | : | Chief Judge Susan J. Dlott |
| | : | |
| v. | : | DECISION AND ORDER |
| | : | |
| BUTLER COUNTY BOARD OF | : | |
| COMMISSIONERS, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

This matter comes before the Court pursuant to a bench trial held on February 19 and 20, 2008. After considering the evidence and arguments advanced by the parties,[1] the Court finds for the Defendants – Butler County, the Butler County Board of Commissioners, three named Butler County Commissioners, and HUT-1-LLC ("HUT-1") – based on the following findings of fact and conclusions of law. Plaintiff Texas Gas Transmission LLC's claims for declaratory and injunctive relief are DENIED. Defendants' counterclaim for declaratory relief is GRANTED IN PART and DENIED IN PART. The Court hereby issues a declaratory judgment stating the following:

At the time that Texas Gas Transmission LLC ("Texas Gas") obtained its pipeline easements in 1949 and 1959, the Princeton Road right of way was sixty-six feet in width. That sixty-six-foot right of way is superior to Texas Gas's pipeline easements.

---

[1] The parties filed trial briefs before and after the trial. (Docs. 67, 68, 69, 76, 77, 78.)

The planned improvements to Princeton Road will constitute an interference with Texas Gas's easements, but that interference is not unreasonable.

Because the original Princeton Road right of way is superior to Texas Gas's easements and pursuant to section 5547.03 of the Ohio Revised Code, Butler County may require Texas Gas to remove or reinforce its pipelines at Texas Gas's expense in order to accommodate the improvements to Princeton Road.

## I.  PROCEDURAL BACKGROUND

This case arises from a dispute over Butler County's plans to widen a portion of Princeton Road in Butler County Ohio.  The Plaintiff, Texas Gas, owns and operates two high-pressure gas pipelines that traverse Princeton Road.  Texas Gas has determined that the proposed road improvements will necessitate the reinforcement of its pipelines.  On July 7, 2006, having reached an impasse over who should absorb the cost associated with the pipeline reinforcement, Plaintiff Texas Gas filed suit against Defendants Butler County, the Butler County Board of Commissioners, three named Butler County Commissioners, and a developer of real property, HUT-1-LLC ("HUT-1"), asserting claims for declaratory and injunctive relief, a state law trespass claim, and takings claims under both the United States and Ohio Constitutions.  (Doc. 1.)  The Butler County Defendants (collectively, Butler County, the Butler County Board of Commissioners, and the three named Commissioners) filed a counterclaim for declaratory judgment (doc. 17) and moved to dismiss the Plaintiff's complaint (doc. 19).  The Court granted in part the Butler County Defendants' motion and dismissed all of Plaintiff's claims except those for declaratory and injunctive relief.  (Doc. 35.)

Subsequently, the Butler County Defendants moved for summary judgment as to all remaining claims.  (Doc. 44.)  The Court later denied Defendants' motion for summary judgment

on the basis that genuine issues of material fact remained in dispute. (Doc. 62.) Shortly thereafter, in preparation for the bench trial, the parties filed proposed findings of fact and conclusions of law (see docs. 61, 63) and trial briefs (docs. 67, 68, 69). The Court held a two-day bench trial and, at the conclusion of the trial, ordered the parties to brief a number of remaining issues. (See doc. 76, 77, 78.)

As indicated above, the surviving claims are Texas Gas's claims for declaratory judgment and injunctive relief and Butler County's counterclaim for declaratory judgment. Texas Gas seeks a declaratory judgment determining:

> (a) Whether the Princeton Road Improvement will extend the road beyond Butler County's 50-foot right-of-way and interfere with Texas Gas's Right-of-way Agreements/easements for its pipelines;
>
> (b) Whether the Princeton Road Improvement will obstruct, unreasonably burden, and interfere with Texas Gas's lawful rights under its Right-of-Way Agreements/easements, including its right of ingress and egress and to inspect, operate and maintain its natural gas pipelines and trespasses thereon;
>
> (c) Whether the Princeton Road Improvement will breach Texas's[sic] Gas's contractual or property rights under its Right-of-way Agreements/easements;
>
> (d) Whether the Princeton Road Improvement will violate or obstruct Texas Gas's full compliance with the Natural Gas Pipeline Safety Act and the Natural Gas Act and the regulations promulgated thereunder;
>
> (e) Whether the Princeton Road Improvement will constitute a "taking" of Texas Gas's property under the Ohio and United States Constitutions, thereby entitling Texas Gas to just compensation for all expenses of adjusting its pipelines to accommodate the extended road.

(Doc. 1 at ¶ 52.)

Texas Gas also seeks injunctive relief, requiring:

> (a) Butler County to refrain from obstructing or otherwise interfering with Texas Gas's lawful property and contractual rights, including its rights to inspect, operate, and maintain its pipelines and its right to have ingress and egress across the proposed improvement area for access to its pipelines and Right-of-way;

<div style="margin-left: 2em;">

(b)      Butler County to refrain from and cease violating or obstructing Texas Gas's compliance with the Natural Gas Pipeline Safety Act and the regulations promulgated thereunder;

(c)      Butler County to provide just compensation to Texas Gas for taking its property for the Princeton Road Improvement, including the expenses for Texas Gas's adjustments.

</div>

(Doc. 1 at ¶ 60.)

With their counter claim, the Butler County Defendants seek a declaratory judgment, requesting the Court to determine that:

<div style="margin-left: 2em;">

(a)      The easements obtained by Plaintiff for its pipeline, as described in the Complaint, are subject to the 66-foot wide right of way established for Princeton Road.

(b)      Plaintiff's pipelines occupying a portion of the right of way of Princeton Road interfere with a proposed improvement of Princeton [sic] and pursuant to Ohio Rev. Code §5547.03, the Board of County Commissioners may order Plaintiff to relocate such pipelines, at Plaintiff's costs.

(c)      Plaintiff, by express agreement with Butler County, has agreed that its pipelines, and the easements within which they were constructed, are subordinate to the public right of way for all public roads established within Butler County.

</div>

(Doc. 17 at ¶ 25.)

Because the Court previously dismissed Texas Gas's takings claims under both the United States and Ohio Constitutions on the basis that those claims are not yet ripe for review (doc. 35), this Court does not consider Texas Gas's request for declaratory judgment and injunctive relief with regard to an alleged "taking" of its property. Plaintiff continues to argue that the proposed improvements to Princeton Road will constitute a taking. However, any such claim remains unripe. Plaintiff has not exhausted state remedies, as is required to bring such a claim. The Court will not permit Plaintiff to circumvent those threshold requirements by considering a takings claim disguised as a claim for declaratory judgment.

## II.       FINDINGS OF FACT

As indicated above, Plaintiff Texas Gas is a natural gas transmission pipeline company. As a transmission company, Texas Gas neither buys nor sells natural gas. Rather, it acts as a common carrier and owns and operates a pipeline system spanning approximately 1500 miles through which it transmits natural gas. That pipeline system includes two twenty-six-inch high-pressure natural gas transmission pipelines that traverse Butler County and run beneath Princeton Road at a location just east of the Princeton Road and State Route 747 intersection.

In 2003, Texas Gas learned that Butler County planned to make certain improvements to Princeton Road in order to create an entrance to a subdivision under development by HUT-1, a developer of real property in Butler County, Ohio. To accommodate the improvements, which include a plan to widen Princeton Road at the location of Texas Gas's pipelines, certain changes must be made to the pipelines. Texas Gas and Butler County currently hold competing easements at the site of the proposed road expansion. The parties' dispute centers around the parties' rights with respect to those easements.

A.      The Parties' Easements

1.      Texas Gas's Easements

The two pipelines in question were installed in 1949 and 1959. To do work affecting a county road, a county permit is required. (Bench Trial Tr. (hereinafter "Tr.") 135:4-136:9, Feb. 19, 2008.[2]) Texas Gas sought such permission for the installation of the pipelines and Butler County granted the requested permission pursuant to two resolutions, the first dated March 11,

_____

[2] The transcript for the bench trial may be found at CM/ECF Docs. 74 and 75.

1949[3] and the second dated August 4, 1959.[4]  The resolutions specifically grant permission to Texas Gas to construct, maintain, operate, replace, and remove two twenty-six-inch pipelines underneath and across certain roads in Butler County.[5]  (Joint Exs. III, IV.)

Though it had obtained permission from Butler County to install the two pipelines, Texas Gas also had to obtain easements from private landowners where the pipelines were to cross private land.  As to the location at issue in this case, Texas Gas obtained easements for the first pipeline in 1949 from William and Letitia Koch, who owned a 149-acre tract of land to the south of Princeton Road (the "Koch property" or "Koch tract"), and William and  Josie Brophy, who owned a twenty-two-acre tract of land to the north of the road (the "Brophy property" or "Brophy tract").  (Tr. 192:12-19.)  In 1959, Texas Gas obtained a second set of easements from those landowners to lay a second pipeline.  (See id.)   The two pipelines run parallel in a north-easterly direction through the Koch property, beneath Princeton road, and continue through the Brophy property.  Id.  The easements were granted pursuant to the following agreements:

(1) A Right of Way Agreement dated October 24, 1949, wherein private landowners William and Letitia Koch granted to Texas Gas a sixty-foot easement and right of way "to lay, construct, maintain, operate, alter, repair and remove a single pipe line . . . for the transportation of oil, gas, petroleum" over the lands described in the Right-of-Way Agreement.  (Pl. Ex. 6.)

---

[3]  Joint Ex. III, Butler County Resolution 11000-A, March 11, 1949, Vol. 32, at 82-83.

[4] Joint Ex. IV, Butler County Resolution 16114, August 4, 1959, Vol. 38, at 39.

[5] Texas Gas also had to obtain permission from the State of Ohio because Princeton Road was at that time operated as a state highway.  (See Pl. Exs. 2-4.)  At the location where the Texas Gas pipelines run beneath the road, Princeton Road is no longer considered a state highway and is operated instead as a county road.  (Tr. 118, 136:5-8, 154-55.)

(2) A Right of Way Agreement dated February 28, 1959, whereby William and Letitia Koch granted to Texas Gas a fifty-foot easement, adjacent to and adjoining the previously granted sixty-foot easement, "to lay, construct, maintain, operate, alter, repair and remove a single pipeline . . . for the transportation of oil, gas, petroleum products or any other liquid gases or substances which can be transported through a pipeline over" the lands described in the Agreement. (Pl. Ex. 7.)

(3) A Right of Way Agreement dated October 4, 1949, whereby private landowners Josie and William Brophy granted to Texas Gas a right of way and sixty-foot easement "the right to lay, construct, maintain, operate, alter, repair, remove, change the size of . . . one . . . line[] of pipe" over the Grantors' land as described in the Right of Way Agreement. (Pl. Ex. 8; see also Pl. Ex. 9.)

(4) A Right of Way Agreement dated March 3, 1959, whereby private landowners Josie and William Brophy granted to Texas Gas "a right of way and easement [fifty] feet in width to lay, construct, maintain, operate, alter, repair, and remove a single pipeline" over the Grantors' land as described in the Right of Way Agreement. (Pl. Ex. 9.)

The Kochs and the Brophys owned their land in fee to the center of Princeton Road at that time. The easements granted to Texas Gas, therefore, include the land running beneath Princeton Road. Specifically, the easements on the Koch property run from the westerly line of the Koch tract northeasterly to the northern line of the Koch tract, identified as the center line of Princeton Road. (Tr. 227:12-228:19.) Similarly, the easements Texas Gas holds on the Brophy tract begin at the center line of Princeton Road, the southernmost property line of the Brophy tract. (Tr. 228:23-7.) Three of the four easements provide, in the description of the property

subject to the easements, that the properties are "subject to all legal highways and easements of record." (See Pl. Exs. 6, 7, and 9.)

### 2. Princeton Road Right of Way

Because they run beneath a public roadway, the pipelines are subject to certain rights of the public that existed at the time Texas Gas obtained the pipeline easements. Butler County maintains that the creation of Princeton Road dates back to 1803, when the United States Congress enacted a law providing that three percent of the funds realized from the sale of public lands in Ohio would be returned to Ohio for the purpose of laying out, opening, and making roads. See An Act: In addition to, and in modification of, the propositions contained in the act entitled "An act to enable the people of the eastern division of the territory northwest of the river Ohio, to form a constitution and state government, and for the admission of such state into the Union, on an equal footing with the original states, and for other purposes," Ch. 21, 2 Stat. 226 (U.S. 1803).

Pursuant to that act, Ohio enacted legislation on February 18, 1804 appropriating money for the development of new roads and creating a pattern for laying out those roads. An Act, Appropriating Part of the Three Per Cent, Granted for Laying Out, Opening and Making Roads Within this State, 2 Ohio Laws 136 (1804).[6] All roads created pursuant to that act were to be sixty-six feet in width, as specified in the following passage:

> And be it further enacted, That it shall be the duty of each road commissioner, to cause the road for which he is appointed to be carefully surveyed and plainly marked, on or as near a direct line as the nature of the ground and situation of the country over which the same is to pass, will admit; and all roads laid out under this act, shall be sixty-six feet in width and shall be and remain public highways.

---

[6] A copy of this law was submitted as Defendants' Exhibit U.

2 Ohio Laws 136, 141-42 (1804). Two years later, in 1806, Ohio enacted An Act, Making

Further Appropriations of the Three Percent, Granted for Laying Out, Opening and Making

Roads in this State, 4 Ohio Laws 28, 29 (1806), which appointed certain road commissioners to

lay out roads, including a road "from Lebanon by Hamilton to the west line of the state." (Def.

Ex. T.)  By resolution, the Ohio General Assembly appointed James Heaton to oversee the

creation of that road. (Resolution Appointing Certain Road Commissioners, Def. Ex. S.)

    As stated above, Butler County maintains that the road now known as Princeton Road

originally formed a portion of the three-percent road from Lebanon to Hamilton.[7] Texas Gas

originally disputed that point, but it conceded at trial that the portion of Princeton Road currently

at issue was originally established as part of that three-percent road and therefore had a right of

way of sixty-six feet in width at the time of its establishment.[8]

    Texas Gas's expert witness, Robert Hines, testified that portions of the original right of

way were vacated in 1938 when Butler County transferred the road to the State of Ohio

Department of Transportation.[9] (Tr. 208:23-209:6.) Until that time, the road had been operated

---

[7] Butler County Engineer Gregory Wilkens, who testified as an expert witness for Butler County, determined that Princeton Road was established as a three-percent road after reviewing the acts and resolution pertaining to the establishment of such roads and comparing a metes and bounds description of the road that James Heaton laid out with various maps and atlases. (See Def. Exs. R, FF, GG; Tr. 313-317.)

[8] Texas Gas's expert witness, Robert Hines, also testified that Princeton Road was originally established as a three-percent road with a sixty-six-foot right of way. (Tr. 231:9-23.)

[9] Since the establishment of that three-percent road, it has undergone various transformations at different locations. The parties spent a significant amount of time addressing those changes during the trial. In addition to exploring the effect of the 1938 dedication, the parties elicited testimony about the transfer of a portion of the road to a turn pike company in 1860 (see Def. Ex. HH; Tr. 213:2-22, 214:13-21, 217:5-11, 242, 244:18-245:5) and the official vacation of a different portion of the road in 1865 (see Def. Ex. OO; Tr. 234:19-235:23, 317:14-

(continued...)

as a county road.  In the 1930s, Butler County sought to transfer the road to the State to be operated and maintained as part of the state highway system.  (See Joint Ex. 1; Tr. 223:22-224:3.)  After speaking to the Director of Highways to confirm the State's willingness to accept control of the road, the Butler County Board of Commissioners passed a resolution on the matter at a December 26, 1936 board meeting.  (Def. Ex. O; Tr. 223:22-224:5.)  The resolution indicates that, as a precondition of the State accepting the road, the County had to submit "evidence of a duly established minimum width of 50 feet of right of way."[10]  (Def. Ex. O; Tr. 233:2-12.)

The County sought to provide proof of the minimum required right of way through a statutory dedication.  Accordingly, the County performed a survey of the roadway, resulting in the preparation of a dedication plat.  (Tr. 225:1-5; Joint Ex. I.)  The plat evinces the intent of the abutting property owners to dedicate a portion of their land – specifically, a "25 foot strip of land north of, and parallel with, the centerline of the Princeton Road No. 18-B [and] 18-C as now

---

[9](...continued)
318:10).  Neither of those changes to the road effected the stretch of road at issue in this case and the testimony elicited by the parties is of little, if any, relevance.

[10] The resolution also indicates that, based on the records for the road:

the minimum established width of said road is now 50 feet, and, . . . Be it resolved by the Board of Commissioners of said Butler County, Ohio that it hereby certifies and guarantees said 50 feet of right of way to be available on said road. And further agrees, upon written notification by the Director of Highways, . . . to remove, or cause to be removed, without expense to the State, at the time of the making of any improvement, all fences, and such buildings or other structures within the right of way limits described above and which in his judgment will interfere with the making of such improvement and.or[sic] the necessary and proper maintenance thereof.

(Def. Ex. O.)

established; and also a 25 foot strip of land south of and parallel with the centerline of the Princeton Road No. 18-B [and] 18-C" – for use as a public road. (Joint Ex. I at 1; Tr. 189:7-25.)

The abutting landowners, including Josie Brophy, demonstrated their agreement with the dedication by signing their names to the plat. (Joint Ex. I; Tr. 199:8-12.) However, the then owners of the Koch property, Frederick Koch, Sr. and Wilhelmina Koch, did not sign the dedication plat. Hines testified that the failure of the Kochs to sign the plat would not effect the public's right of way for that portion of the road because a common law dedication arose in connection with that strip of land due to the Kochs' failure to object to the use of the road. (Tr. 199:13-200:2; 238:2-25.)

The Butler County Board of County Commissioners accepted the dedication in 1938, pursuant to resolution, as indicated on the plat itself. (Joint Ex. I, Tr. 200:13-17.) The statutory dedication operated to formalize the dedication of the roadway to the County and provided proof of a perpetual easement in favor of the Board of County Commissioners, on behalf of the public in general, to operate a road for roadway purposes that was fifty feet in width. (Tr. 198:19-22, 190:9-10.) The roadway was then turned over to the State of Ohio for operation as part of the state highway system. (Tr. 200:18-24; Def. Ex. EE at 33.) The portion of Princeton Road currently under dispute is no longer operated as a state highway, though it is unclear when control of the road was returned to Butler County. (See Tr. pg 118, 136:5-8, 154, 155:23-25).

Hines claimed that the effect of the 1938 dedication plat was to vacate portions of the original sixty-six-foot right of way and establish the width of the right of way at that location as fifty feet. (Tr. 208:23-209:6.) Specifically, Hines testified that the dedication evidenced, under statutory law, the location of the roadway and the rights of the County to that roadway. (Tr. 190:10-12.) As a result, Hines claimed, the dedication set the County's right of way at fifty feet

and superceded any prior rights of the County to land outside of the dedicated width of fifty feet. (Tr. 208:23-209:6.)

Taking a different view, Butler County Engineer Gregory Wilkens, who testified as an expert witness for Butler County, claimed that in his experience, Butler County had never vacated a road through the use of a dedication plat alone. (Tr. 306:13-23.) Rather, in all cases with which he was familiar, a separate instrument was used to complete the vacation. (Id.) According to Wilkens, vacation proceedings usually begin in one of two ways pursuant to Ohio law: Property owners may petition for a vacation or the Board of Commissioners, on its own, may initiate proceedings. (Tr. 305:13-22.) In both cases, the commissioners hold public hearings and a viewing and then may take action to vacate the property. (Id.) Based on the fact that he found no official vacation of the original sixty-six-foot right of way at the location at interest, Wilkens opined that the original sixty-six-foot right of way is still in existence at that location. (Id. 311:12-25.)

Since 1938 and subsequent to the installation of Texas Gas's pipelines, Butler County obtained additional easements from abutting landowners.[11] (Tr. 308:19-309:13.) Those easements, which run parallel to Princeton Road, have extended the width of the road right of way to approximately 100 feet at that location. (Tr. 308:19-309:13; Def. Exs. F, G.) However, the road itself has not been improved or used to the full extent of that legal width. Instead, the road does not appear to have been improved to a width of more than fifty feet. Wilkens admitted on cross examination that the consultants Butler County hired to survey Princeton Road during

---

[11] Subsequent to the establishment of the two pipelines, two subdivisions were built, one on the north side and one on the south side of Princeton Road. At the time that these subdivisions were built there was a further dedication of public right of way, widening the road at that location. (Tr. 237:3-25, 288:20-289:8.)

the initial phase of the road improvement project determined that the original right of way for Princeton Road was fifty feet. (Tr. 333:20-334:13.) According to Wilkens, the consultants based their decision on the 1938 dedication plat and did not look further back in time to determine what rights preexisted. Wilkens maintained that had the consultants researched further, they would have discovered evidence of a continuing sixty-six-foot right of way. (Id. 334:10-335:18.)

B. **Agreements Between Butler County and Texas Gas**

At trial, the parties introduced a number of agreements entered into over the years between Butler County and Texas Gas addressing the rights of the parties with respect to various locations at which Texas Gas's pipelines traverse Butler County's roads. On August 11, 1959, concurrent with the installation of Texas Gas's second pipeline, Texas Gas and Butler County entered into an agreement providing, in relevant part, as follows:

> Whereas, by Resolutions numbered 11000-A & 16114, permission has been granted to Texas Gas Transmission Corporation by the County Commissioners of Butler County, Ohio, to construct, maintain, operate, replace and remove two 26" pipelines underneath and across certain roads in Butler County, Ohio;
> And whereas, it is necessary that public interest be not inconvenienced by said pipelines;
> . . . [Texas Gas and Butler County agree] That Texas Gas Transmission Corporation, in consideration of the granting to it by the Board of the County Commissioners of Butler County, Ohio, the right to construct, maintain, operate, replace and remove a pipeline underneath and across certain roads and streets in Butler County, Ohio, hereby promises and agrees that if any lands over which it has obtained easements for pipeline purposes are later subdivided and roads or streets are dedicated for public use over said lands in Butler County, Ohio subject to said easements to Texas Gas Transmission Corporation, the rights of the public to use such dedicated streets shall be paramount to the right of Texas Gas Transmission Corporation, its successors and assigns, lessees or agents; and any construction, maintenance, operation, replacement or removal of pipelines across or underneath said dedicated streets or roads shall be so constructed, maintained

and operated as not to unduly incommode the public in the use of said roads or streets.

(Joint Ex. V.) Defendants' expert witness, Wilkens, opined that this agreements acts as a general subordination agreement, subordinating all rights of Texas Gas to the rights of the public in the Butler County roads. (See Def. Ex. EE.)

Texas Gas objects to Defendants' assessment of the 1959 agreement. As a point of contrast, Texas Gas introduced a number of other agreements (hereinafter "subordination agreements") entered into by Texas Gas and Butler County subsequent to the 1959 agreement. (See Pl. Ex. 33-39.) These agreements were executed to address Texas Gas's and Butler County's respective rights as developers built new subdivisions over portions of Texas Gas's pipelines. (Tr. 131:5-10.) Through the agreements, Texas Gas permitted Butler County to build new roads over Texas Gas's pipelines. (Tr. 133:21-134:11.) Texas Gas explicitly subordinated certain rights in these agreements. For example, in the first agreement introduced by Texas Gas – an agreement executed in 1992 regarding new rights of way for portions of a road referred to as Highpoint Boulevard – Texas Gas agrees to "subordinate unto Butler County its interest acquired by virtue of the [1949 and 1959] Grants of Right-of-Way and Easement . . . to the right of Butler County to construct, operate, and maintain Highpoint Boulevard." (Doc. 33 at 2.) The agreement also specifically describes who shall be responsible for the costs of repairs or modifications to the pipelines necessitated by future road work:

> In the event Butler county, Ohio, its successors, and assigns subsequently make any changes to Highpoint Boulevard (i.e. expansion, strengthening, support, etc.), Butler County and its successors and assigns agree to reimburse Texas Gas, its successors, and assigns any and all costs which it incurs in making alterations to and modifications of its two pipelines . . . which Texas Gas, in its sole discretion, deems necessary to protect the same.

> In the event that Texas Gas is ever compelled by Butler County, Ohio, its successors, or assigns to make modifications to or alterations to its two pipelines, . . . Butler County, Ohio, its successors, and assigns agrees to reimburse Texas Gas, its successors, and assigns for the costs of such modifications or alterations.

(Pl. Ex. 33 at 4-5.)  The other subordination agreements introduced by Plaintiff contain similar language.  (See Pl. Exs. 34-39.)  No such agreement exists for Princeton Road.

### C.     The Princeton Road Improvements and the Effect on Texas Gas's Pipelines

Sometime during or prior to 2003, Defendant HUT-1 commenced construction of a new subdivision known as "The Reserves" on an area of land located east of State Route 747 and south of Princeton Road.  Currently, the only access to the Reserves subdivision is through another subdivision that has ingress and egress to State Route 747.  Butler County has determined that an additional access route to the subdivision is necessary to lessen congestion on State Route 747, eliminate or reduce a dangerous intersection on the same road, and alleviate traffic flow problems.  (See Tr. 280-286.)  Subsequently, HUT-1 and Butler County decided to extend a road within the subdivision to the north end of the development to create an entrance at Princeton Road.  In order to improve line-of-sight problems at the new intersection, Butler County requires that certain improvements (hereinafter "Princeton Road improvements") be made  to Princeton Road as a precondition to constructing this entranceway and completing the development.  The planned improvements include raising a portion of Princeton Road at the new intersection and widening the road to make room for a new left turn lane for westbound traffic.  Specifically, Butler County plans to extend the paved portion of the road to approximately sixty-six feet in width and to construct a new berm on the north side of the road.  (Tr. 286-288; Def. Ex. YY.)  The bulk of the widening is to occur on the north side of the road, with the south side of the pavement remaining relatively fixed.

The site of the Princeton Road improvements happens also to be the site at which Texas Gas's pipelines run beneath Princeton Road. Texas Gas became aware of the planned changes to Princeton Road in 2003 when Butler County notified Texas Gas that the County and/or HUT-1 intended to commence construction for the Princeton Road improvements. As a pipeline company engaged in the transportation of natural gas in interstate commerce, Texas Gas is subject to regulation by the United States Department of Transportation under the Natural Gas Pipeline Safety Act, 49 U.S.C. §§ 60101, *et seq.*, and the National Gas Act, 15 U.S.C. §§ 717, *et seq.* Those laws impose upon Texas Gas a duty to ensure that its pipelines comply with various safety requirements. The safety measures required at any given location differ depending on the stressors present at that location. In other words, the design and maintenance of the pipelines vary from point to point depending on the terrain they must traverse.

At trial, a former senior engineer in the pipeline design section at Texas Gas, William Long, testified about the steps taken to meet safety guidelines. (Tr. 55-65, 78-87.) He discussed both the initial design and the continued care of the pipelines. Long, who worked for Texas Gas for twenty-eight years prior to his retirement in November 2007, explained that when designing pipelines for a particular area, the engineers have to take into consideration the route the pipeline will take, the amount of gas the company needs to pump through that pipeline, and the diameter of the pipeline. (Tr. 50:5-23.) The engineers then look at other factors such as pipe wall thickness and grade of steel to determine what type of pipeline is best suited for the particular location, taking into consideration whether the pipeline will run beneath railroads, highways, streets, rivers, or streams. (Id.) Every pipeline has a minimum yield strength of steel and wall thickness. Depending on these factors, a pipeline can withstand a certain amount of combined

stress that if exceeded will cause the pipeline to rupture. Various forces cause stress on the pipeline, including the weight of the ground lying above it and the traffic load at any given point. (Tr. 63-64.)

As to long-term maintenance, Long testified that the pipelines are protected by a cathodic protection system, an electrical system that prevents corrosion. (Tr. 56-58.) Texas Gas regularly performs a close interval survey of the pipelines to verify that the cathodic system is running properly. (Tr. 56:11-16.) Other measures taken to monitor the pipelines include physical observation, air surveillance, and testing with various electronic devices such as an internal inspection device that travels through the pipelines and records data about internal corrosion, dents, and other issues that may affect pipeline efficacy and safety. (Tr. 55-56.)

Because of previous attempts to bring its pipelines into compliance with federal law and in order to ensure the integrity of the pipelines at the Princeton Road crossing, those portions of the pipelines that run beneath Princeton Road are currently encased with protective coverings. Texas Gas installed the casings around the two pipelines in 1949 and 1959. The casings, which are actually a second pipeline that has a larger diameter than the line carrying the natural gas, protect the pipelines from traffic and from the weight of the soil and pavement by absorbing that load so that the load is not transmitted to the pipelines. (Tr. 57-60.)

The improvements to Princeton Road that Butler County now requires will extend the road on the north beyond the ends of the casings and will cover portions of the pipelines that have not yet been encased. (Tr. 70-85.) After learning of Butler County's plans, Texas Gas determined that the changes to the road would pose potentially serious problems to the continued safety and maintenance of the pipelines. First, the widened roadway would effectively "trap" the

ends of the existing casings on the north side of the highway, making access to the casings problematic. Second, the improvements will impose excessive loads on the existing pipelines due to highway traffic causing differential settlement. The differential settlement could cause the pipelines and casings to come into contact with one another and fall out of compliance with federal law, which requires each buried or submerged pipeline to be electrically isolated from other underground metallic structures. Should that occur, the pipelines would no longer be safe. Finally, portions of the pipelines that lie outside the current roadway and remain unencased were not designed to sustain highway traffic or the heavy stress of construction equipment. The construction equipment and the highway traffic will place stress on the pipelines, which could result in pressure in excess of industry standards and result in pipeline failure. A pipeline failure at the site of the Princeton Road improvements could result in damages, including the possible loss of property and life. (See Tr. 93:8-94:18.)

To the extent Butler County and HUT-1 are to proceed with the road improvements, Texas Gas plans to adjust the pipelines to avoid an unsafe condition by installing two new unencased pipeline crossings, the estimated cost of which is $868,134. Texas Gas had also proposed an additional plan that would involve extending the existing pipeline casings, though that plan is not preferred.[12] Asserting that the road improvements would encroach upon its easements, Texas Gas requested that Butler County and HUT-1 pay the expense of reinforcing the pipelines. Butler County and HUT-1 refused to pay for the cost of the improvements, leading to the instant lawsuit.

---

[12] At trial, William Long testified that Texas Gas typically does not use casings on new pipelines due to corrosion problems found to be related to the use of the casings. Instead, the current practice is to use unencased pipeline crossings that are designed to withstand the expected load for the particular location. (Tr. 91:17-93:5.)

## III.     ANALYSIS

As described above, Texas Gas hold easements which cross Princeton Road at a northeasterly direction in Butler County.  Butler County also holds a road easement or right of way for Princeton Road.[13]  The current dispute derives from a potential conflict in the parties' use and enjoyment of their rights at the point where Texas Gas's easements intersect with the Princeton Road right of way.

Texas Gas argues that at the time it obtained easements to lay pipelines beneath Princeton Road, the Princeton Road right of way was only fifty feet.  Texas Gas further claims that its easement rights, including its subsurface rights, are superior to any right of Butler County to widen Princeton Road beyond that fifty-foot right of way.  Finally, Texas Gas argues that it is entitled to an injunction preventing Butler County from carrying out the proposed road improvements because: (1) Texas Gas's rights are superior to any rights of Butler County to expand the road beyond fifty feet and the expansion of Princeton Road will obstruct, unreasonably burden, and interfere with Texas Gas's lawful rights; and (2) the proposed expansion will violate or obstruct Texas Gas's full compliance with the Natural Gas Pipeline Safety Act and the Natural Gas Act and the regulations promulgated thereunder.

Defendants respond that the Princeton Road right of way was sixty-six feet in width at the time Texas Gas obtained each of its easements and that Texas Gas's easements are subject to that sixty-six-foot right of way.  Furthermore, Defendants argue that regardless of the width of

---

[13] See Ohio Op. Atty. Gen. No. 94-032, 1994 WL 269148 (Ohio 1994) (syllabus ¶ 1) ("The 'right-of-way' of a public road refers to the easement acquired by the public in that portion of the land of the owner thereof over which a road or highway passes, with all the powers and privileges that are necessarily incident to such easement.").

the Princeton Road right of way at the time Texas Gas obtained its easements, Texas Gas subsequently, in 1959, expressly agreed that its pipelines, and the easements within which the pipelines were constructed, are subordinate to the public right of way for all public roads established within Butler County. Finally, Defendants argue that they should be permitted to proceed with the proposed road improvements and that, pursuant to section 5547.03 of the Ohio Revised Code, the Board of County Commissioners may order Texas Gas to relocate its pipelines at Plaintiff's costs.

The Court begins its analysis below with a discussion of the law governing easement holder's rights in Ohio.[14]

### A.     Law on Easements

Under Ohio law, an easement is a non-possessory property interest in the land of another which entitles the owner of the easement to a limited use of the land in which the interest exists. Andrews v. Columbia Gas Transmission Corp., 544 F.3d 618, 624 (6th Cir. 2008) (citing Alban v. R.K. Co., 15 Ohio St. 2d 229, 239 N.E.2d 22, 24 (Ohio 1968)); see also Fruth Farms v. Village of Holgate, 442 F. Supp. 2d 470, 475 (N.D. Ohio 2006); City of Norwood v. Forest Converting Co., 16 Ohio App. 3d 411, 476 N.E.2d 695, 699-700 (Ohio Ct. App. 1984). Easements such as those at issue give rise to both a dominant and servient estate. The owner of the easement is referred to as the owner of the dominant estate. Myers v. McCoy, No. 2004CAE07059, 2005 WL 1038871, at *3 (Ohio Ct. App. May 4, 2005). The land in which the interest exists is called the servient estate. Id. The owner of the dominant estate, or the holder of the easement, has a right to a limited use of the land in which the interest exists, the servient

---

[14] Both parties agree that Ohio law governs their dispute.

estate. <u>Crane Hollow, Inc. v. Marathon Ashland Pipe Line, LLC</u>, 138 Ohio App. 3d 57, 740 N.E.2d 328, 334 (Ohio Ct. App. 2000). In general, the granting of an easement includes the grant of all things necessary for the use and enjoyment thereof. <u>Columbia Gas Transmission Corp. v. Adams</u>, 68 Ohio Misc. 2d 29, 646 N.E.2d 923, 926 (Ohio C.P. Ct. 1994) (citing <u>Trattar v. Rausch</u>, 154 Ohio St. 286, 95 N.E.2d 685 (Ohio 1950)).

Therefore, with regard to the rights of the easement holder vis-a-vis the rights of the fee owner of the land subject to the easement, Ohio courts have long held that:

> The owner of land that is subject to an easement has the right to use the land in any manner not inconsistent with the easement, but has no right to interfere with the reasonable and proper use of the easement or obstruct or interfere with the use of the easement. The owner of an easement has the right to remove objects within the easement that unreasonably interfere with or obstruct the reasonable and proper enjoyment and use of the easement.

<u>Id.</u> (internal citations omitted); <u>see</u> <u>also</u> <u>Andrews</u>, 544 F.3d at 624; <u>Swango Homes, Inc., v. Columbia Gas Transmission Corp.</u>, 806 F. Supp. 180, 186 (S.D. Ohio 1992); <u>Columbia Gas Transmission Corp. v. Bennett</u>, 71 Ohio App. 3d 307, 594 N.E.2d 1, 8 (Ohio Ct. App. 1990); <u>Rueckel v. Texas Eastern Transmission Corp.</u>, 3 Ohio App. 3d 153, 444 N.E.2d 77, 84 (Ohio Ct. App. 1981).

Many courts in past years have addressed disputes between pipeline companies such as Texas Gas who hold easements in private property and the owners of the lands that are subject to those easements. Those courts typically have held that the landowner does not have the right to interfere in the pipeline company's reasonable use of its easement. <u>See</u> <u>Rueckel</u>, 3 Ohio App. 3d 153, 444 N.E.2d 77; <u>Tenneco Inc. v. May</u>, 512 F.2d 1380, 1380-81 (6th Cir. 1975) (applying Kentucky law). Thus, for example, an Ohio appellate court has held that landowners could not grow trees on the rights of way of pipeline companies to the extent that those trees obstructed,

unreasonably burdened, or interfered with the pipeline company's exercise of its easement rights. Rueckel, 3 Ohio App. 3d 153, 444 N.E.2d at 85. The same court also held that the pipeline company had the right to remove said trees without compensating the landowners because the trees were planted after the construction of the pipelines. Id.

In another case, the Sixth Circuit dealt with a dispute between a landowner and a pipeline company that held an easement over the landowner's property for the placement of its pipelines. Tenneco Inc., 512 F.2d at 1380-81. The landowner planned to develop a portion of his land into a subdivision and constructed a paved roadway over his land in order to serve the subdivision. Id. The pipeline company, Tenneco, sought an injunction to prevent anyone from using the roadway, which was constructed over Tenneco's pipeline easement, until the pipeline could be reinforced at the landowner's expense. Id. at 1381. The district court, noting that under Kentucky law, "the servient holder has no right to use the land subject to the easement in such a manner as to interfere with the reasonable and prudent exercise and enjoyment of the easement by its owner," held that the road construction constituted an unreasonable interference with the dominant estate and that the landowner should bear the costs of reinforcing the pipeline. Tenneco Inc. v. May, 377 F. Supp. 941, 943-45 (E.D. Ky. 1974). The Sixth Circuit affirmed the holding of the district court without substantial discussion. Tenneco Inc., 512 F.2d at 1381.

It may appear at first blush that Rueckel and Tenneco are dispositive of the instant dispute. Indeed, Texas Gas cites those cases as support for its argument that Butler County may not make any improvements to Princeton Road that may interfere with Texas Gas's right to the reasonable use of its easements without reimbursing Texas Gas. Those cases are not applicable to the instant case, however, because they involve disputes between the servient and dominant

estate holders whereas this case involves a dispute between two dominant estate holders.  The servient estate holders in the instant case – the owners of the land upon which both Butler County and Texas Gas hold easements – are not parties to this dispute.  Were Butler County in the position of a servient estate holder in this case, the cases cited by Texas Gas would indicate a clear method of resolving the parties' competing rights.  However, Butler County is not a servient estate.  Instead, Butler County, like Texas Gas, is an easement holder, and therefore is similarly situated to Texas Gas with regard to its rights in the use of the land.

As to the rights of holders of separate servitudes, such as easements, in the same property, the Restatement (Third) of Property (Servitudes) section 4.12 provides as follows:

> Unless the terms of the servitudes . . . provide otherwise, holders of separate servitudes creating rights to use the same property must exercise their rights so that they do not unreasonably interfere with each other. In the event of irreconcilable conflicts in use, priority of use rights is determined by priority in time, except as a later-created servitude takes free of another under the applicable recording act.

See also Cincinnati Gas & Elec. Co. v. Bd. of County Comm'rs, Warren County, Ohio, Case No. 03CV6149, Magistrate's Decision at 2-3 (Warren County, Ohio Ct. C.P. October 26, 2004).[15]

The parties in this case have arrived at an irreconcilable conflict in their intended use of their easements.  Butler County wishes to widen Princeton Road to the full width of its easement. If Butler County proceeds, the improvements may cause damage to Texas Gas's pipelines and will interfere with Texas Gas's ability to access its pipelines.  Sufficient evidence was introduced at trial – principally the testimony of William Long – that the proposed Princeton Road

---

[15]  The magistrate's decision in Cincinnati Gas & Electric Co. v. Board of County Commissioners, Warren County, Ohio, Case No. 03CV6149, was later adopted by the court, see Final and Appealable Judgment Entry at 1 (Feb. 25, 2005), and affirmed by the Ohio Court of appeals for the Twelfth District, see Case No. CA 2005-03-038.

improvements may cause the pipelines to fall out of compliance with the Natural Gas Pipeline

Safety Act, 49 U.S.C. §§ 60101, et seq., the Natural Gas Act, 15 U.S.C. §§ 717, et seq., and the

federal regulations promulgated under both Acts that address external corrosion control and

electrical isolation of pipelines.  49 C.F.R. § 192.467.  As is relevant herein, 49 C.F.R. §

192.467, provides:

> (a) Each buried or submerged pipeline must be electrically isolated from other
> underground metallic structures, unless the pipeline and the other structures are
> electrically interconnected and cathodically protected as a single unit.
>
> (b) One or more insulating devices must be installed where electrical isolation of
> a portion of a pipeline is necessary to facilitate the application of corrosion
> control.

Long testified that the planned improvements to Princeton Road  will impose excessive

loads on the pipelines currently running beneath Princeton Road and that the excessive loading

may result in dangerous corrosion of the pipelines.  Little, if any, evidence was introduced to

contradict Long's testimony.  Accordingly, the Court finds that the planned road improvements

pose a threat to the pipelines' future compliance with federal regulations.  On the other hand,

Texas Gas's desire to prevent Butler County from widening Princeton Road also interferes with

Butler's County's use and enjoyment of its easement.  To resolve the conflict between the

parties' intended use of their easements, this Court must first determine which party's easement

rights are superior.

**B.      Superiority of Rights**

The priority or superiority of the parties' use rights in this case depends on both the width

of the Princeton Road right of way at the time that Texas Gas obtained its easements and the

nature of any subsurface rights attendant to the Princeton Road right of way.

1.     **The Width of the Princeton Road Right of Way as of 1949 and 1959**

As indicated above, priority of use rights is typically determined by priority of time. In other words, to the extent that Butler County's easement predates Texas Gas's easements, Butler County's rights are superior. Texas Gas does not dispute that Princeton Road, and therefore the Princeton Road right of way, was in existence at the time Texas Gas obtained its easement. However, Texas Gas argues that at that time, the Princeton Road right of way was only fifty feet in width and that to the extent Butler County has since acquired additional easement rights expanding the width of the right of way, those rights were acquired later in time and are inferior to Texas Gas's rights. The Butler County Defendants and HUT-1 maintain the right of way for the disputed stretch of Princeton Road had not decreased in width since the original establishment a sixty-six-foot-wide right of way.

a.     **Original Width of Right of Way**

Though at one point Texas Gas disputed that Princeton Road was originally established as a three-percent road, it has since conceded that point. Indeed, the evidence demonstrates that the portion of Princeton Road at issue originated as a three-percent road. The 1804 Act providing for the establishment of such roads states that "all roads laid out under this act, shall be sixty-six feet in width and shall be and remain public highways." 2 Ohio Laws 136, 141-42 (1804). Engaging in a lengthy analysis of that act and several others passed during that time period, the Ohio Supreme Court conclusively held that the 1804 Act "operated to create in the state a 66-foot right of way for each '3% road' laid out and opened in accordance therewith." Hernik v. Director of Highways, 169 Ohio St. 403, 160 N.E.2d 249, 250 (Ohio 1959) (syllabus ¶

1).  Accordingly, the Court finds that at the time of its original establishment, the right of way for Princeton Road was sixty-six feet in width.

### b.  Official Vacation

The Court next determines whether, since the establishment of the road, the original width of the right of way has been lessened at the location of interest in this case.  As indicated above, Texas Gas argues that portions of the original right of way were vacated in 1938 when Butler County transferred Princeton Road to the State of Ohio Department of Transportation.  (See Joint Ex. I.)  Specifically, Texas Gas argues that the 1938 dedication plat prepared in preparation for the transfer of the road to the state operated to set the width of the County's right of way at fifty feet, thereby vacating the remaining sixteen feet of the original sixty-six-foot right of way.  Butler County responds that the dedication could not operate as a vacation of the extra sixteen feet of right of way and the original right of way survives.

To examine the effect of the 1938 dedication, this Court must look to the law at the time of the dedication.  Because the pertinent statutes have undergone few if any substantial changes, this Court also considers judicial interpretations of the current versions of those statutes.[16]  In 1938, section 6886 of the Ohio General Code (current version appearing at Ohio Rev. Code § 5553.31[17]), dealt with dedication of land for road purposes and provided that:

---

[16] See Ohio Op. Atty. Gen. No. 84-016,  1984 WL 196610, at *3 (Ohio 1984), which provides a brief history Chapter 5553 of the Ohio Revised Code as compared to previous versions in the Ohio General Code.

[17] Section 5553.31 of the Ohio Revised Code provides, in relevant part, as follows:

Any person may, with the approval of the board of county commissioners, dedicate lands for road purposes. A definite description of the lands to be

(continued...)

> Any person or persons may, with the approval of the county commissioners, dedicate lands for road purposes. A definite description of the lands to be dedicated with a plat of the same thereto attached and signed by the party dedicating the same, with the approval and acceptance of the commissioners endorsed thereon, shall be placed upon the proper road records of the country in which such road is situated. Provided, however, that if the lands so dedicated contemplate a change in an existing road, the same proceedings shall be had thereon, after the commissioners by proper resolution approve and accept the lands for such purpose, as are provided for in cases where the commissioners by unanimous vote declare their intention to locate, establish, widen, straighten, vacate or change the direction of a road without petition therefor, but otherwise the proposal to dedicate land for road purposes together with the acceptance of the grant by the commissioners shall constitute the lands so dedicated a public road, without any further proceedings thereon.

Ohio Gen. Code § 6886 (1936). Pursuant to section 6886, the 1938 dedication could not in and of itself accomplish a vacation of portions of Princeton Road. Rather, the Board of Commissioners would, in addition to accepting the dedication plat, have to comply with the procedures set forth in sections 6862-6878 of the Ohio General Code (current versions appearing at Ohio Rev. Code §§ 5553.04-5553.16)[18] for vacating a portion of the road.

Section 6862 of the Ohio General Code (current version appearing at Ohio Rev. Code § 5553.04), provided that the board of county commissioners, when "of the opinion that it will be

---

[17](...continued)
dedicated with a plat of such lands thereto attached and signed by the party dedicating such lands, with the approval and acceptance of the board indorsed thereon, shall be placed upon the proper road records of the county in which such road is situated. . . . If the lands so dedicated contemplate a change in an existing road, the same proceedings shall be had thereon, after the board by proper resolution approves and accepts the lands for such purpose, as are provided in cases where the board by unanimous vote declares its intention to locate, establish, widen, straighten, vacate, or change the direction of a road without a petition therefor, but otherwise the proposal to dedicate lands for road purposes, together with the acceptance of the grant by the board, constitutes the lands so dedicated a public road without any further proceedings thereon.

[18] See Ohio Op. Atty. Gen. No. 84-016, 1984 WL 196610, at *3 (Ohio 1984).

for the public convenience or welfare," could vacate a public road through a "resolution set[ting] forth the general route and termini of the road, or part thereof" to be vacated. Ohio Gen. Code § 6862 (1936). The vacation could be done on the board's own initiative or on petition by twelve freeholders residing in the vicinity of the proposed vacation. Id. In order for a road vacation to be valid, the commissioners had to follow the procedures outlined in the following sections, which included, among other steps: (1) the fixing of a date, through resolution, for a viewing of the proposed improvement and a hearing on the matter, and (2) the provision of notice of the time and place of the viewing and hearing by publication in a newspaper. None of those steps were taken in the instant case.[19] There is no evidence that the Board of County Commissioners ever resolved to vacate the additional sixteen feet of right of way not dedicated for public use in the 1938 dedication or that any of the steps necessary to affect such a vacation were carried out.[20] Nor is there any evidence that the Board intended that the 1938 dedication would have the effect of vacating the excess portion of right of way. The Court therefore finds that the dedication did not amount to an official vacation of sixteen of the original sixty-six feet of right of way.

### c.     Vacation by Estoppel

Defendants argue that even if the 1938 dedication was insufficient to constitute a valid statutory vacation of the portions outside the fifty-foot dedicated width of Princeton Road, the Court should declare the dedication to have resulted in a vacation through estoppel. Several

---

[19] In contrast, those steps were followed when a different stretch of Princeton Road was vacated in 1865. (See Def. Ex. OO; Tr. 317:19-318:5.)

[20] Texas Gas's own expert witness, Robert Hines, admitted that there is no evidence that the Board ever held vacation proceedings with regard to that portion of road. (See Tr. 233:18-234:8, 235:24-236:7.)

Ohio courts interpreting the current versions of the statutes described above have held that public roads may only be vacated in accordance with the statutory provisions set forth in Ohio Revised Code Chapter 5553 (appearing in 1938 at Title IV, Chapter 2 of the Ohio General Code). See Thompson v. Smith, 172 Ohio App. 3d 98, 873 N.E.2d 323, 330 (Ohio Ct. App. 2006) ("[T]he only means for officially vacating a public road [are] through the statutory vacation proceedings."); State ex rel. Strategic Capital Investors, Ltd. v. McCarthy, 126 Ohio App. 3d 237, 710 N.E.2d 290, 295-96 (Ohio Ct. App. 1998) (holding that "where the elimination of a public road is concerned, [Ohio Revised Code section] 5553.04 is the appropriate measure," and "[i]n order for a road vacation to be valid, the board must follow the procedures outlined in [section] 5553.05"); Hoyt v. Hull, 111 Ohio App. 3d 784, 677 N.E.2d 377, 380-81 (Ohio Ct. App. 1996) (holding that a public road "could be vacated only in compliance with Chapter 5553" and that an order vacating a public road without proper compliance with the procedures prescribed by statute is invalid).

In keeping with those rulings, it is also well settled that public roads, or portions thereof, may not be vacated through adverse possession. See Houck v. Bd. of Park Commrs. of the Huron Cty. Park Dist., 116 Ohio St. 3d 148, 876 N.E.2d 1210, 1213-15 (Ohio 2007); Heddleston v. Hendricks, 52 Ohio St. 460, 40 N.E. 408, 410 (Ohio 1895); City of Bryan v. Killgallon, NO. WMS-81-6, 1981 WL 5791, at *2-3 (Ohio Ct. App. Sep 25, 1981); Rex v. Stoltz, 24 Ohio Law Abs. 564, 1937 WL 2303, at *7 (Ohio Ct. App. 1937); Harbor Land Co. v. Village of Fairport, 23 Ohio Law Abs. 44, 49 N.E.2d 194, 200-01 (Ohio Ct. App. 1936) (rights to a public highway may not be acquired through adverse possession); Fleming v. City of Steubenville, 44 Ohio App. 121, 184 N.E. 701, 702 (Ohio Ct. App. 1931) (noting that it is well-settled law that in Ohio

"adverse possession may not be successfully asserted against a municipality or public authorities"); Joseph v. City of Akron, 19 Ohio App. 412, 1925 WL 2485, at *2 (Ohio Ct. App. Dec. 23, 1925). Similarly, the Ohio Supreme Court has held that the width of a three-percent road could not "be said to have later been lessened by the mere peaceful encroachment thereon for a number of years by a private individual." Hernik v. Director of Highways, 169 Ohio St. 403, 160 N.E.2d 249 (Ohio 1959) (syllabus ¶ 1).

Nonetheless, there are cases that suggest that vacation of a public road may occur by estoppel under rare circumstances. Harbor Land Co., 23 Ohio Law Abs. 44, 49 N.E.2d at 204-05; Fleming, 44 Ohio App. 121, 184 N.E. at 702-03; Joseph, 19 Ohio App. 412, 1925 WL 2485, at *2. But see American Legion Post No. 521 v. The Village of Shadyside, Ohio, No. 83-B-8, 1983 WL 4583, at *2 (Ohio Ct. App. Nov. 30, 1983) (suggesting that a public road may never be considered vacated by estoppel); Cleveland & P. Ry. Co. v. City of Cleveland,  23 Ohio C.D. 482, 1910 WL 688, at *7 (Ohio Cir. Ct. 1910) ("It being once established that the premises in controversy were originally dedicated to the public for street purposes, no grant, nor prescription, nor mere nonuser, nor equitable estoppel can change its status."). This Court need not determine whether such a claim is possible under Ohio law because even assuming that vacation of a public road by estoppel is possible, the facts of this case would not sustain such a claim.

Under Ohio law, estoppel may arise where: (1) the nonrelying party made a factual misrepresentation, (2) that was misleading, (3) that induced actual reliance that was reasonable and in good faith, and (4) that caused detriment to the relying party. Bonham v. Hamilton, No. CA2006-02-030, 2007 WL 210587, at *4 (Ohio Ct. App. Jan. 29, 2007); see also Fleming, 44

Ohio App. 121, 184 N.E. at 703 (quoting Ensel v. Levy & Brother, 46 Ohio St. 255, 19 N.E. 597, 600 (1889)). Equitable estoppel against a county or municipality is recognized only in "exceptional cases where there has been such conduct on the part of the public authorities, relied and acted upon by an adjacent owner, as will estop the public from retaking possession" of the disputed property. Joseph, 19 Ohio App. 412, 1925 WL 2485, at *2; see also Fleming, 44 Ohio App. 121, 184 N.E. at 703 (suggesting that there may be no equitable estoppel "where the city or the local authorities have done no affirmative act to mislead the claimant").

Texas Gas argues that Butler County misled them by soliciting a dedication of a stretch of land that was fifty feet in width from the adjacent landowners in 1938. Texas Gas points to the fact that the dedication plat was filed with the State and with the Butler County road records and claims that when Texas Gas installed its pipelines, Texas Gas believed the right of way was fifty feet. Despite Texas Gas's interpretation of the 1938 dedication, the Court remains unconvinced that the dedication amounted to a factual misrepresentation of the right of way that would be significant enough to justify the application of estoppel. In order to transfer the road to the state at that time, the state required "evidence of a duly established minimum width of 50 feet of right of way." (Def. Ex. O.) The Board of County Commissioners was clear in its 1936 resolution discussing its plans to provide such evidence that the "minimum established width of said road [was at that time] 50 feet." (Id. (emphasis added)). That statement indicates two important points: first, that there was already a road in existence in that location and second, that the established width of the road was at least fifty feet, if not more. The Court recognizes that the dedication plat that was ultimately accepted by the Board dedicated a fixed width of road for use as a public road. (See Joint Ex. I.) Viewing that document in connection with the 1936

resolution leads this Court to conclude that the Board only intended the plat to serve as evidence of a minimum right of way of fifty feet and did not intend it to amount to an abandonment of any portions of the original right of way. Indeed, this view is consistent with the fact that the County never took the steps under Ohio Law – specifically, sections 6862-6886 of the Ohio General Code – to vacate the extra sixteen feet of original right of way not included in the dedication plat. As is evident from this case, it is often difficult to determine the right of way of a road based on one event in that road's history. Thus in this case, it has been necessary to examine the effect of the 1938 dedication in light of both the history of Princeton Road and the statutory provisions governing road dedication and vacations. When viewed in the proper context, the 1938 dedication is not misleading.

For the same reasons, Texas Gas's alleged reliance on the dedication as establishing the full right of way of the road was unreasonable. No greater information was accessible to the Board of County Commissioners at the time of the 1938 dedication than could have been obtained in the same manner and by the same degree of diligence by Texas Gas at the time that it obtained easements for its pipelines. Both the 1936 resolution and the statutes relevant to the interpretation of the dedication, as well as the laws and other documents demonstrating the origin of Princeton Road as a three-percent road, were available to Texas Gas.

Finally, even if this Court had found that the acceptance by the Board of Commissioners of the 1938 dedication plat amounted to an affirmative act of misrepresentation, there is no evidence to show that Texas Gas relied on this misrepresentation to its detriment. There is, for example, no evidence that Texas Gas would not have obtained easements or installed the pipelines at their current location had it known that the County's easement was sixty-six rather

than fifty feet in width. Nor is there any evidence that Texas Gas's original decision about the manner and extent to which the pipelines should be encased was dependent on the ultimate width of the right of way as opposed to being based simply on the actual width of the improved road.[21] Moreover, the Court notes that the laws and other documents demonstrating the origin of Princeton Road as a three-percent road and governing the effect of the 1938 dedication were available to Texas Gas had they chose to investigate. See Fleming, 44 Ohio App. 121, 184 N.E. at 704 (noting, in denying a claim of estoppel that "[t]he city authorities had no more knowledge, and no more knowledge was accessible to them, than could be obtained in the same manner and by the same degree of diligence by the abutting owners").

The Court accordingly finds that the Princeton Road right of way was sixty-six feet in width at the time when Texas Gas obtained its easements.

### 2. Subsurface Rights

Texas Gas argues that regardless of the width of the Princeton Road right of way, Butler County's rights are limited to the surface of the roadway and do not include any subsurface rights. In making this argument, Texas Gas relies on St. Albans Township Board of Trustees v. Columbia Gas Transmission Corp., 116 Ohio App. 3d 349, 688 N.E.2d 48 (1997). Butler County responds that the Princeton Road right of way includes the right to use the ground beneath the right of way and maintains that St. Albans is in conflict with a controlling decision of the Ohio Supreme Court, Ziegler v. Ohio Water Service Co, 18 Ohio St. 2d 101, 247 N.E.2d 728 (1969).

---

[21] As noted above, Princeton Road has yet to be improved to the full sixty-six-foot width of the original right of way.

St. Albans involved a dispute similar to the dispute in the instant case. The defendant in that case, Columbia Gas Transmission Corp., had obtained easements to place a gas line over private property. 116 Ohio App.3d 349, 688 N.E.2d at 49. Like in the instant case, the pipeline easements ran beneath a preexisting dedicated public road. Some years after the pipelines were installed, St. Albans Township desired to lower the grade of the road. Id. at 49. The planned improvements necessitated the relocation of the pipelines. Id. The St. Albans Township Board of Trustees and the Licking County Board of Commissioners filed suit to force Columbia Gas to move or relocate its pipelines. Id. at 50. Columbia Gas maintained that it should not be required to moved the transmission line at its own expense. Id. The Court of Common Pleas of Licking County, Ohio held that St. Albans Township had to pay for the relocation of the pipelines, but it based its holding largely on its finding that the no subsurface rights attached to the Township's easement for the operation of the roadway. Id. at 51. The Court of Appeals for the Fifth District of Ohio affirmed and incorporated the decision of the Court of Common Pleas. Id. at 50.

In reaching its decision, the Court of Common Pleas in St. Albans relied on two Ohio Supreme Court cases. See Ohio Bell Tel. Co. v. Watson, 112 Ohio St. 385, 147 N.E. 907 (Ohio 1925); Callen v. Columbus Edison Elec. Light Co., 66 Ohio St. 166, 64 N.E. 141 (1902). To the extent that the Supreme Court in those cases held that an easement for a public highway does not include the subsurface property rights, those cases were implicitly overturned by Ziegler, 18 Ohio St. 2d 101, 247 N.E.2d 728.

In Ziegler, a landowner brought suit to enjoin a water company from installing a water pipeline on her property until such time as the water company purchased an easement from her. Id. at 729. Ziegler's property was already subject to an easement for a state highway. Rather

than seek an additional easement for the installation of a water line, the defendant water company entered into an agreement with the Board of County Commissioners of Union County to install the pipeline within the portion of Zeigler's property that was subject to the highway easement.  Id.  Ziegler argued that because she owned the property beneath the highway easement in fee, the pipeline amounted to an additional burden on her property for which she was entitled compensation.

The court ultimately held that the installation of water pipes below in real property for which an easement for highway purposes has been given "is not an added burden on such land," for which the owner must be compensated.  Id. at 731.  In holding as such, the court noted that "[t]he effect of the use of a highway upon abutting land has always been variable and subject to change. The complexities of modern life have produced uses of highways which would have been unheard of at the time many easements for public highways were granted."  Id.  Consistent with that notion is the general principle stated above that "the granting of an easement includes the grant of all things necessary for the use and enjoyment thereof."  Adams, 68 Ohio Misc. 2d 29, 646 N.E.2d at 926 (citing Trattar, 154 Ohio St. 286, 95 N.E.2d 685).  Thus, to the extent that the reasonable use and enjoyment of a highway easement may at some point involve the use of the land beneath the surface, such rights would be included in the easement.[22]

_____

[22] To the extent that Texas Gas understands Ziegler to be consistent with the principle that no subsurface rights attach to a highway right of way, this Court disagrees with Texas Gas's reading of Ziegler.  In order for the Ziegler court to have found that the water line did not create an additional burden, the court must have considered the highway right of way to have included rights to the subsurface property.  If the subsurface property was considered to be completely unburdened by any easement, the addition of new utilities underground would necessarily be considered a new burden.

The St. Albans court did not address Ziegler in its opinion, and it does not appear that the court considered the effect of Ziegler on the continued precedential value of Watson, 112 Ohio St. 385, 147 N.E. 907 or Callen, 66 Ohio St. 166, 64 N.E. 141. This Court could not find and Plaintiff has not produced any decision following or relying upon the St. Albans decision. On the contrary, at least one court – the Court of Common Pleas of Warren County, Ohio – has declined to follow St. Albans on the basis that it was incorrectly decided. Cincinnati Gas & Elec. Co. v. Bd. of County Comm'rs, Warren County, Ohio, Case No. 03CV6149, Magistrate's Decision at 2-3 and Final and Appealable Judgment Entry (adopting the Magistrate's Decision) at 1. The court addressed St. Albans as follows:

> St. Albans Twp. Ed. of Trustees v. Columbia Gas Transmission Corp. (1997), 116 Ohio App.3d 349, holds that where a county possesses an easement in a roadway and where a utility holds an easement for gas transmission lines under the roadway (an easement acquired subsequent to the county's), and the county wishes to change the grade of the road, the county must pay the cost of relocating the gas lines. This holding is derived from the notion that a right of way for highway purposes give no subsurface rights to the holder. This Magistrate does not believe that to be a correct statement of law.
>
> It is true that the Supreme Court of Ohio once held that "[t]he erection and maintenance of telephone poles and wires within the limits of a county highway is an additional burden upon the easement and an invasion of the property rights of the abutting owner, for which he is entitled to compensation." Ohio Bell Tel. Co. v. The Watson Co. (1925), 112 Ohio St 385, syllabus at 3. However, in Ziegler v. Ohio Water Service Co. (1969), 18 Ohio St.2d 101, at syllabus, the Court held "[t]he construction and maintenance underground of a water pipeline, for public purposes, in real property outside a municipal corporation which is subject to an easement for highway purposes, is not an added burden on such property for which compensation must be paid." This holding would appear to be at odds with the proposition that a county acquires no subsurface rights in an easement for highway purposes. Apropos of this, the Court of Appeals for Medina County has held that "[a]n electric company's use of the county roadway to maintain its poles and wires is not an additional burden upon the fee of the abutting property owner for which he is entitled to compensation." Ohio Edison Co. v. Carroll (1984), 14 Ohio App.3d 421, syllabus at 3. Therefore, CG&E cannot claim exclusive subsurface rights in roads at issue.

Cincinnati Gas & Elec. Co. v. Bd. of County Comm'rs, Warren County, Ohio, Case No. 03CV6149, Magistrate's Decision at 6. This Court agrees with the analysis of the Court of Common Pleas of Warren County, Ohio on this matter and finds that pursuant to the Ohio Supreme Court's decision in Ziegler, 18 Ohio St. 2d 101, 247 N.E.2d 728, Texas Gas cannot claim exclusive subsurface rights in the property lying beneath Princeton Road.

Moreover, the Court notes that even if it had found St. Albans persuasive, the instant case is distinguishable from St. Albans in that Butler County does not seek to lower Princeton Road. Rather Butler County seeks to expand the width of the road over the surface of the land. The proposed changes do not involve an expansion into the subsurface. Thus, even if this Court found the Princeton Road right of way was limited to surface rights, the Court would be left in the same place – with a conflict between holders of servitudes in the same property – and the Court would have to resolve the conflict in the same manner as it does now, by determining whose rights are superior.

To that end, the Court has thus far determined that, at the time Texas Gas obtained its easements, Butler County held a preexisting road easement that was sixty-six feet in width and that included certain subsurface rights. That preexisting easement is superior, giving Butler County priority of use rights.

C.      **Circumstances Under Which Defendants May Proceed with the Proposed Road Improvements**

The Court must now determine whether the Defendants' intended use of that easement so unreasonably interferes with Texas Gas's use of its own easements as would as would justify an injunction against Defendants or entitle Texas Gas to compensation.

###### 1.    Injunctive Relief

Texas Gas argues that Defendants should be enjoined from widening the road because the planned improvements would constitute an unreasonable interference with Texas Gas's easement and may cause Texas Gas's pipelines to fall out of compliance with federal regulations. For the following reasons, the Court finds injunctive relief would not be proper.

First, the planned road improvements do not constitute an <u>unreasonable</u> interference with Texas Gas's rights. The County has determined that it is necessary, for reasons of public safety, to widen Princeton Road to provide an additional entrance to the subdivision under development south of Princeton Road. Additionally, the County's plans to improve the roadway within the full limits of the right of way are entirely consistent with the County's rights in that roadway. Just as described in <u>Ziegler</u>, the planned improvements to Princeton Road may be seen as a natural change in the evolution of the community, and a denial of the use of the full width of the right of way would be a "rejection of evolutionary change." <u>Ziegler</u>, 18 Ohio St. 2d 101, 247 N.E.2d at 731. Indeed, it is not only reasonable, but also foreseeable, that the County should seek to widen certain roads to accommodate for population growth and increased traffic.

Second, the fact that the improvements may cause Texas Gas's pipelines to fall out of compliance with federal regulations does not in and of itself render the interference unreasonable. It is Texas Gas's responsibility to ensure that its pipelines remain in compliance with the federal regulations, regardless of any changes Butler County may make to Princeton Road or of who ultimately must pay for necessary changes to the pipelines. That Texas Gas may have to reinforce its pipelines to accommodate changes in the roadway does not alone call for an injunction preventing Butler County from proceeding with the improvements to Princeton Road.

## 2.    Compensation

Texas Gas next argues that to the extent Defendants are permitted to proceed with the improvements, Defendants must reimburse Texas Gas for the cost of reinforcing its pipelines. Butler County, on the other hand, argues that Texas Gas is not entitled to compensation because: (1) Butler County has a preexisting sixty-six-foot-wide right of way and therefore has superior use rights; (2) Texas Gas subordinated its easements to the public right of way for all public roads by express agreement in 1959; and (3) Butler County is entitled under section 5547.03 of the Ohio Revised Code to order Texas Gas to relocate the pipelines at Texas Gas's own expense.

Butler County is correct that Texas Gas is not entitled to compensation to the extent the widening of Princeton Road within Butler County's preexisting sixty-six-foot right of way necessitates relocation or reinforcement of the pipelines.  See Cincinnati Gas & Elec. Co. v. Bd. of County Comm'rs, Warren County, Ohio, Case No. 03CV6149, Magistrate's Decision at 5, and Final and Appealable Judgment Entry (adopting the Magistrate's Decision) at 1. As discussed above, Butler County's rights to the use of that easement are superior and the planned widening of the road is a reasonable exercise of those rights.  However, Defendants admit that the proposed road improvements stretch beyond the original sixty-six-foot easement in that the County intends to construct a new berm on the side of the road in easements lying adjacent and parallel to the original easement.  Butler County obtained the new easements after Texas Gas obtained its pipeline easements.  Accordingly, to the extent that the new easements overlap Texas Gas's easements, Butler County's rights to the use of the new easements are subordinate to Texas Gas's rights.  Texas Gas therefore may be entitled to partial compensation to the extent

its pipelines are effected by the construction of the berm unless, as Butler County argues, Texas Gas's rights were subordinated by express agreement or by Ohio statute.

As indicated above, Texas Gas and Butler County entered into an agreement in 1959 whereby Texas Gas agreed:

> that if any lands over which it has obtained easements for pipeline purposes are later subdivided and roads or streets are dedicated for public use over said lands in Butler County, Ohio subject to said easements to Texas Gas Transmission Corporation, the rights of the public to use such dedicated streets shall be paramount to the right of Texas Gas Transmission Corporation, its successors and assigns, lessees or agents; and any construction, maintenance, operation, replacement or removal of pipelines across or underneath said dedicated streets or roads shall be so constructed, maintained and operated as not to unduly incommode the public in the use of said roads or streets.

(Joint Ex. V.)  This Court was previously unwilling to read the agreement so broadly as to mean that Butler County's rights are superior to any competing rights held by Texas Gas.  (Doc. 62 at 12.)  The Court's opinion on that matter was not changed by the evidence produced at trial.  The 1959 agreement states only that Texas Gas subordinates its rights to the "public use" of the streets and promises not to "unduly incommode" the public when exercising its own easement rights.  (Joint Ex. V.)  Butler County has demonstrated that the widening of Princeton Road is necessary for the public's safe use and enjoyment of the roadway.  Accordingly, the Court recognizes that the planned road improvements constitute a "right[] of the public to use" the street and that pursuant to the 1959 agreement, Texas Gas would not be able to prevent Butler County from going forward with the improvements.  However, the 1959 agreement says nothing about who is to pay for the cost of alterations in the pipelines necessitated by the public's use of the roadway.

Viewing the 1959 agreement in contrast with the latter subordination agreements (Pl. Exs. 33-39), which explicitly address who will be responsible for the cost of any relocation or alteration of the pipelines necessitated by any future improvements to the roads covered by the agreements, the Court finds that the 1959 agreement was never intended to address the issues raised in the instant case. Had the parties planned to allocate the costs of modification to the pipelines necessitated by future improvements to the roadways, they could have done so explicitly as they did in subsequent agreements.

Butler County maintains that the costs of reinforcing the pipelines are so high that if the County is forced to absorb those costs, it will not be able to proceed with the planned road improvements. Therefore, Butler County argues, the costs of the reinforcement would unduly incommode the public's use of the pipelines. Contrary to Butler County's assertion, the Court does not read the clause, "and any construction, maintenance, operation, replacement or removal of pipelines across or underneath said dedicated streets or roads shall be so constructed, maintained and operated as not to unduly incommode the public in the use of said roads or streets," to mean that Texas Gas must pay for the reinforcements simply because the costs are too expensive for the County, particularly when the costs have arisen due to the County's own use of its easement.

Having determined that the 1959 agreement does not resolve the issue of compensation, the Court turns finally to section 5547.03 of the Ohio Revised Code. Butler County maintains that pursuant to section 5547.03, the County may order the removal of the pipelines or remove the pipelines at Texas Gas's own expense to the extent that the pipelines interfere with the proposed improvement of Princeton Road. Section 5547.03 provides in pertinent part as follows:

All . . . corporations using or occupying any part of a highway . . . with . . . oil . . . pipes . . . , other than by virtue of a franchise legally granted, shall remove from the bounds of such highway . . . any and all . . . oil . . . pipes . . . when, in the opinion of the board of county commissioners, they . . . interfere or may interfere with the proposed improvement of such highways . . . or the use thereof by the traveling public. By obtaining the consent and approval of the board, such . . . corporations may relocate their properties within the bounds of such highways . . . in such manner as the board prescribes. The giving of such consent and approval by the board does not grant any franchise rights.

If, in the opinion of the engineer, such . . . companies have obstructed any such highway . . . , or if any of their properties are, in his opinion, so located that they do or may interfere with the proposed improvement, maintenance, or repair the board shall notify such . . . corporation directing the removal or relocation of the obstruction or property, and, if they do not within five days proceed to so remove or relocate and complete the removal or relocation within a reasonable time, the board may do so by employing the necessary labor. The expense incurred shall be paid in the first instance out of any moneys available for highway purposes, and not encumbered for any other purpose, and the amount shall be certified to the proper officials to be placed on the tax duplicate against the property of such person, partnership, or corporation, to be collected as other taxes and in one payment, and the proper fund shall be reimbursed out of the money so collected, or the account thereof may be collected from such person, partnership, or corporation by civil action by the state on the relation of the board.

Only a handful of cases cite section 5547.03, none of which are directly on point. This Court is therefore left with little guidance in determining whether this statute applies to the instant dispute. As an initial matter, the Court finds that to the extent that the planned improvements to Princeton Road may cause the pipelines to become unstable resulting in risk to the public, the pipelines currently interfere with the proposed improvement of Princeton Road. Thus, it would appear that Butler County may order Texas Gas to remove the pipelines or in the alternative, may allow Texas Gas to reinforce the pipelines at Texas Gas's expense to prevent such interference.

Shedding some light on this matter is the decision of the Warren County, Ohio Court of Common Pleas in <u>Cincinnati Gas & Elec. Co. v. Bd. of County Comm'rs, Warren County, Ohio</u>,

Case No. 03CV6149, Magistrate's Decision at 5, and Final and Appealable Judgment Entry (adopting the Magistrate's Decision) at 1. In that case, Warren County undertook a project to improve two county roads for the purpose of public safety. Warren County acquired its rights of way in those roads during the 1800s. The project required the relocation of 24 poles and associated equipment owned by Cincinnati Gas & Electric Co. ("CG&E"). The poles and equipment were located within several private easements which CG&E acquired from landowners in 1933 and 1956. The private easements coincided to some degree with Warren County's rights of way. CG&E sought a declaratory judgment that it was not required to bear the costs of relocating the pipes. Id., Magistrates Decision at 1.

In determining whether section 5547.03 of the Ohio Revised Code applied to the dispute, the court noted that the statute "does not appear to address the subject of easements." Id. at 5. Nonetheless, the court found that in that case, where the road right of ways preexisted CG&E's easements, section 5547.03 required CG&E to pay for the cost of relocating its utility poles. The court declined to offer an opinion on the extent to which section 5547.03 "may [validly] purport to require utilities holding easements which antedate a county's easements to pay for the cost of relocation." Id.

This Court has found nothing to indicate that section 5547.03 does not apply under those circumstances. The fact that the statute is silent as to easement holders does not indicate to this court that easement holders were not intended to fall within the scope of the statute. Indeed, the statute makes no reference to the manner or means by which a utility company gains permission to install its utilities other than to distinguish between franchise-holders and non-franchise-holders. Nor does the statute condition the County's rights on the time that it obtained those

rights.  In other words, there is no indication from that statute that it was meant to apply only in situations wherein the County's highway right of way was obtained prior to the utility's occupation of the roadway.  The Court therefore finds that section 5547.03 of the Ohio Revised Code applies to the instant dispute and that pursuant to that statute, Butler County may order may order Texas Gas to remove the pipelines or to reinforce the pipelines at Texas Gas's own expense.[23]

## IV.    CONCLUSION

---

[23] Texas Gas argues that the Court should apply section 5501.51 rather than section 5547.03.  Section 5501.51(A) provides that "The state shall reimburse a utility for the cost of relocation of utility facilities necessitated by the construction of a highway project only in the event that the utility can evidence a vested interest in the nature of a fee interest, an easement interest, or a lesser estate in the real property it occupies in the event that the utility possesses a vested interest in such property. The utility shall present evidence satisfactory to the state substantiating the cost of relocation. The director may audit all financial records which the director determines necessary to verify such actual costs."  That section does not apply to the instant dispute because the road project at issue is not a state highway project and the state is not a party.  Indeed, sections 5501.51 and 5547.03 appear in an entirely different chapters of the Ohio Revised Code.  Chapter 5501 deals with the Ohio Department of Transportation whereas Chapter 5547 deals with county – as opposed to state – highways.  As to the relationship between these two chapters, an Ohio court has previously found that:

> Argument advanced indicating that the rights and duties of the Director of Highways and county commissioners and township trustees must be lumped together and considered as a whole, rather than examined separately to determine what rights and duties are given by statute to each authority with respect to the roads placed under its respective jurisdiction, falls short of supporting authority and sound reason. A search for statutory authority lumping these various rights and duties together is like looking for a black hat in a dark room. On the contrary, the Legislature has thrown the spotlight on three specifically divided categories and divided the powers with respect to roads into: state highways over with respect to roads into: state exclusive power; county roads over which county commissioners are given exclusive powers; township trustees are given exclusive power over township roads. Separate chapters under the Code deal with the powers of each body or person under his or its jurisdiction.

Masheter v. Ashland Pipe Line Co., 2 Ohio Misc. 179, 208 N.E.2d 162, 165 (Ohio Ct. C.P. 1965).

For the reasons stated above, the Court hereby enters judgment for Defendants on all of Plaintiff's claims for declaratory and injunctive relief. The Court enters judgment in favor of the Plaintiff on Defendants' counterclaim for a declaratory judgment that "Plaintiff, by express agreement with Butler County, has agreed that its pipelines, and the easements within which they were constructed, are subordinate to the public right of way for all public roads established within Butler County." However, the Court enters judgment for Defendants on the remainder of Defendants' counterclaim for declaratory judgment.

The Court hereby issues a declaratory judgment stating the following:

At the time that Texas Gas Transmission LLC ("Texas Gas") obtained its pipeline easements in 1949 and 1959, the Princeton Road right of way was sixty-six feet in width. That sixty-six-foot right of way is superior to Texas Gas's pipeline easements.

The planned improvements to Princeton Road will constitute an interference with Texas Gas's easements, but that interference is not unreasonable.

Because the original Princeton Road right of way is superior to Texas Gas's easements and pursuant to section 5547.03 of the Ohio Revised Code, Butler County may require Texas Gas to remove or reinforce its pipelines at Texas Gas's expense in order to accommodate the improvements to Princeton Road.

IT IS SO ORDERED.


      s/Susan J. Dlott
Chief Judge Susan J. Dlott
United States District Court